UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-00373-JAW |
| | ) | |
| ROBERT K. NEWMAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON PLAINTIFF UNITED STATES OF AMERICA'S MOTION FOR
PARTIAL SUMMARY JUDGMENT ON SELF-REPORTED INCOME TAXES**

The United States brings a civil suit against an individual defendant and
several entities holding liens on the defendant's property, seeking to enforce federal
tax liens attached to the property. Before the Court is the Government's motion for
partial summary judgment on the individual defendant's self-reported tax liabilities.
As the material facts are undisputed, the Court finds that the defendant is liable for
his self-reported income tax liabilities and that there are valid tax liens attached to
his real property, which secure the self-reported income tax liabilities. The Court,
therefore, grants the Government's motion, but only to the extent of the liabilities the
Government has posited.

## I.    BACKGROUND

On November 28, 2022, the United States of America (Government) filed a civil
action pursuant to 26 U.S.C. § 7401, et seq., against: Robert K. Newman; Kennebunk
Savings Bank; the Woods Association, Inc.; Superior Plus Energy Services Inc. d/b/a
Downeast Energy; Casco Bay Electric, LLC; Maine Revenue Services; the Maine

Department of Labor; and the Tax Collector of Kennebunk, Maine. *Compl.* (ECF No. 1).  The Government sought to "(1) reduce to judgment unpaid federal tax liabilities owed by Robert K. Newman and (2) enforce the federal tax liens against certain real property belonging to him."  *Id.* at 1.  Specifically, the Government requested:

> (1) a judgment against Mr. Newman for "income tax liabilities for . . . each of the years 2010 through 2017 and 2020";
>
> (2) a judgment against Mr. Newman for "trust fund liabilities under 26 U.S.C. § 6672 in regard to Newman Communications, Inc., for the periods ending December 31, 2011, March 31, 2012, June 30, 2012, December 31, 2012, and March 31, 2013,";
>
> (3) a "determination that the United States has valid and subsisting federal tax liens under 26 U.S.C. §§ 6321 and 6322"; and
>
> (4) an "order enforcing the federal tax liens . . . pursuant to 26 U.S.C. § 7403" against Mr. Newman's Real Property at 13 Annies Way, Kennebunk, Maine (13 Annies Way).

*Id.* at 7-8.

On May 25, 2023, Defendant Kennebunk Savings Bank (KSB) filed a crossclaim against Mr. Newman, seeking to foreclose on the first of its two mortgages secured by an interest in 13 Annies Way.  *Def./Cross-Claim Pl. Kennebunk Savings Bank's Cross-Claim for Foreclosure and Sale Against Def./Cross-Claim Def. Robert K. Newman* (ECF No. 41).

On June 30, 2023, the Government filed a notice of intent to seek summary judgment and a request for prefiling conference. *Pl. United States of America's Notice of Intent to Seek Summ. J. and Req. for Pre-Filing Conference* (ECF No. 45). The Government represented that it was "ready to move for partial summary judgment . . . on . . . over 90% of the income taxes at issue under Count One that were self-reported, on all [trust fund recovery penalties] in Count Two, and also for immediate enforcement of the related liens for those liabilities (Count Three) through the appointment of a real estate agent as a receiver to sell the property." *Id.* at 1-2. On July 19, 2023, Mr. Newman responded, objecting to the Government's intent to seek summary judgment, as well as the proposed date for the prefiling conference. *Def. Resp. to Pl. United States of America's Notice of Intent to Seek Summ. J. and Req. for Pre-Filing Conference* (ECF No. 47). Mr. Newman also "use[d] this filing to dispute" what he characterized as "multiple false and misleading statements in the Plaintiff's June 30, 2023 filing." *Id.* at 2.

On July 24, 2023, KSB filed a notice of intent to seek summary judgment on its crossclaim against Mr. Newman for foreclosure and sale. *Def./Cross-Claim Pl. Kennebunk Savings Bank's Notice of Intent to File a Mot. for Summ. J. and Req. for Pre-Filing Conference* (ECF No. 50). KSB represented that "there does not appear to be any dispute regarding the existence of a default, KSB's right to foreclose, or KSB's priority position." *Id.* at 1. It then noted that its motion for summary judgment would focus on "the disputed legal question whether the United States is entitled to delay

or prevent KSB from enforcing its uncontested right to judicial foreclosure and sale during the pendency of the United States's tax lien enforcement action." *Id.* at 2.

On July 25, 2023, the Court issued a procedural order in advance of the Local Rule 56(h) conference, which was scheduled for August 16, 2023. *Procedural Order* (ECF No. 51). On August 1, 2023, the Government filed its Local Rule 56(h) memorandum. *Pl. United States of America's Local Rule 56 Mem. Regarding the United States' Forthcoming Mot. for Partial Summ. J.* (ECF No. 54). In its memorandum, the Government represented that it would only move for summary judgment regarding "the self-reported income tax liabilities of defendant Robert K. Newman for tax years 2011 to 2017 and 2020 . . . [and] enforcement of the federal tax liens securing those self-reported income tax liabilities against Robert Newman's real property at 13 Annies Way." *Id.* at 2.

On August 2, 2023, KSB filed its Local Rule 56(h) memorandum. *Def./Cross-Claim Pl. Kennebunk Savings Bank's Local Rule 56 Mem. Regarding Kennebunk Savings Bank's Forthcoming Mot. for Partial Summ. J.* (ECF No. 55). On August 8, 2023, the Government responded to KSB's Local Rule 56(h) memorandum. *Pl. United States of America's Resp. to Kennebunk Savings Bank's Local Rule 56 Mem.* (ECF No. 59). The Government represented that it would "not oppose entry of a judgment stating the Bank is entitled to foreclose due to default on the mortgage," but it took "issue over how to dispose of the subject property in light of two meritorious claims for judicial sale by both the United States and the Bank." *Id.* at 2. The Court held

4

the Local Rule 56(h) conference by videoconference on August 16, 2023. *Telephone Conference* (ECF No. 60).

On August 29, 2023, the Government filed a motion for partial summary judgment, an attached memorandum of law, and a statement of material facts. *Pl. United States of America's Mot. for Partial Summ. J. on Self-Reported Income Taxes* (ECF No. 67) (*Gov't's Mot.*); *Mem. of Law in Support of United States' Mot. for Partial Summ. J. on Newman's Self-Reported Income Taxes* (*Gov't's Mem. of Law*); *Pl. United States' Local Rule 56(b) Statement of Facts in Support of Its Mot. for Partial Summ. J. on Self-Reported Income Taxes* (ECF No. 68) (PSMF). The Government requested that the Court enter summary judgment that:

(1) "[D]efendant Robert K. Newman is liable to the United States for self-reported income tax liabilities for tax years 2011 to 2017 and 2020 in the amount of $325,132.52 as of July 31, 2023";

(2) "[T]here exist valid and subsisting tax liens securing those self-reported income tax liabilities that attached to the real property located at 13 Annies Way, Kennebunk, Maine"; and

(3) "[T]he United States is entitled to enforce the liens under 26 U.S.C. § 7403 through a sale of that property, including a receiver appointed under § 7403(d) as requested by the United States."

*Gov't's Mot.* at 1-2. On September 19, 2023, Mr. Newman filed an opposition, *Def. Robert K. Newman's Resp. to United States of America's Mot. for Partial Summ. J. on Self-Reported Income Taxes* (ECF No. 80), but he did not respond to the Government's

statement of material facts, nor did he file his own statement of material facts.  On October 2, 2023, the Government replied to Mr. Newman's response.  *Pl. United States of America's Reply Br. in Support of Its Mot. for Partial Summ. J. on Self-Reported Income Taxes* (ECF No. 91).  To date, KSB has not filed a motion for summary judgment.

## II.   STATEMENT OF FACTS

Before reciting the material facts in this case, the Court addresses Mr. Newman's failure to respond to the Government's statement of material facts and to submit his own statement of material facts.  District of Maine Local Rule 56(c) provides that a "party opposing a motion for summary judgement shall submit with its opposition a separate, short, and concise statement of material facts," which "shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts."  D. ME. LOCAL RULE 56(c).  This statement "may contain in a separately titled section additional facts, each set forth in a separately numbered paragraph and supported by a record citation."  *Id.*  Local Rule 56(f) further provides that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless property controverted."  D. ME. LOCAL RULE 56(f).  In other words, if a party opposing a motion for summary judgment fails to submit a statement of material facts as required by Local Rule 56(c), any material facts proffered by the party moving for summary judgment are deemed admitted, as long as they are supported by proper record citations.

Here, the Government submitted a statement of material facts along with its motion for partial summary judgment as required by Local Rule 56(b).[1] Mr. Newman failed to respond to the Government's statement of material facts. Although Mr. Newman is a *pro se* litigant, "[i]t is well-settled in this Circuit that a *pro se* litigant is not exempt from compliance with procedural rules." *Demmons v. Tritch*, 484 F. Supp. 2d 177, 182 (D. Me. 2007) (citing *Rivera v. Riley*, 209 F.3d 24, 28 (1st Cir. 2000), *abrogated on other grounds by Casanova v. Dubois*, 289 F.3d 142 (1st Cir. 2002); and *Posadas de P.R., Inc. v. Radin*, 856 F.2d 399, 401 (1st Cir. 1988)). Mindful of Mr. Newman's status as a *pro se* litigant, the Court reviewed his opposition to the Government's motion for partial summary judgment to ascertain whether he intended to submit his own statement of material facts or otherwise took issue with any of the Government's material facts. Having found that Mr. Newman nowhere disputes any of the Government's material facts, the Court concludes that Mr. Newman has admitted all material facts for purposes of the present motion for partial summary judgment.

The failure of a party to respond to a statement of material facts does not necessarily mean that the Court is bound to accept each proffered fact. Instead, the

---

[1] District of Maine Local Rule 56(b) provides:

> A motion for summary judgment shall be supported by a separate, short, and concise statement of material facts, each set forth in a separately numbered paragraph(s), as to which the moving party contends there is no genuine issue of material fact to be tried. Each fact asserted in the statement shall be simply and directly stated in narrative without footnotes or tables and shall be supported by a record citation as required by subsection (f) of this rule.

D. ME. LOCAL RULE 56(b).

moving party must itself comply with Local Rule 56 and supply record support for each of its proposed facts. *See* D. ME. LOCAL RULE 56(f) ("The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment"). To assure that the Government's proposed facts are properly before the Court, the Court reviewed each of the proffered facts to determine whether each is adequately buttressed by record support. Having done so, the Court finds that each of the Government's proposed facts was properly supported by a record citation. Therefore, having performed its due diligence review of the summary judgment record, the Court admits all material facts proffered by the Government.

### A.    Robert Newman's Self-Reported Income Tax Liabilities for Tax Year 2011

Mr. Newman reported $83,698 in tax and no payments on his 2011 Form 1040 (U.S. Individual Income Tax Return), which he signed. PSMF ¶ 1. On December 3, 2012, based on the amount of tax reported on the return, the IRS assessed $83,698 in tax on Mr. Newman's income tax account for tax year 2011. *Id.* ¶ 2. Adding other assessments made for late-filing penalties, prepayment penalties, and late-payment penalties, Mr. Newman owes $89,994.49 as of July 31, 2023, which includes unpaid income tax, penalties, interest, and other statutory additions.[2] *Id.* ¶ 3. This figure

---

[2]      This figure appears to be in error. As factual support for PSMF ¶ 3, the Government cites paragraph 12 and footnote five of the Declaration of Mary Bishop, as well as Mr. Newman's tax transcript for tax year 2011. *See Pl. United States of America's Mot. for Appointment of Pre-Judgment Receiver to Sell Property*, Attach. 4, *Decl. of Mary Bishop, Revenue Officer Advisor* ¶ 12 & n.5, Ex. 2 (ECF No. 52-4) (*Bishop Decl.*). According to paragraph 12 of the Bishop Declaration, Mr. Newman owed $89,994.49 on December 3, 2012, the date of assessment for tax year 2011. *Id.* ¶ 12. Paragraph 12 goes on to note that "the penalties and interest on [Mr. Newman's self-reported income tax liabilities] bring the total amount attributable only to the self-reported tax to $159,807.22 with interest

excludes liabilities arising from later deficiency assessments for tax year 2011 based on an examination of the return.  *Id.*

### B.   Robert Newman's Self-Reported Income Tax Liabilities for Tax Year 2012

Mr. Newman reported $93,384 in tax and only $50,213 in prepayments on his 2012 Form 1040, which he signed.  *Id.* ¶ 4.  On February 24, 2014, based on the amount of tax reported on the return, the IRS assessed $93,384 in tax on Mr. Newman's income tax account for tax year 2012, which had also been updated to reflect the prepayment credits.  *Id.* ¶ 5.  For tax year 2012, Mr. Newman owes $21,295.08 in income tax liabilities as of July 31, 2023, including unpaid income tax, penalties, interest, and other statutory additions.  *Id.* ¶ 6.

### C.   Robert Newman's Self-Reported Income Tax Liabilities for Tax Year 2013

Mr. Newman reported $17,476 in tax and no payments on his 2013 Form 1040, which he signed.  *Id.* ¶ 7.  On October 19, 2015, based on the amount of tax reported on the return, the IRS assessed $17,476 in tax on Mr. Newman's income tax account for tax year 2013.  *Id.* ¶ 8.  For tax year 2013, Mr. Newman owes $37,829.52 in income tax liabilities as of July 31, 2023, including unpaid income tax, penalties, interest, and other statutory additions.  *Id.* ¶ 9.

---

as of July 31, 2023."  *Id.*  This $159,807.22 figure also matches other statements in the Government's Statement of Material Facts.  For example, PSMF ¶ 27 states that Mr. Newman's total self-reported income tax liability amounts to $325,132.52 and that this amount is the sum of the liabilities for each of the years 2011 through 2017 and 2020.  However, the individual amounts sum to $325,132.52 only if $159,807.22 is used for tax year 2011.  Even though, based on the plain language of the Bishop Declaration and the Government's assertions elsewhere, $159,807.22 appears to be the correct figure for PSMF ¶ 3, the Court has accepted the Government's figure and fixed the amount, as alleged, at $89,994.49.

### D.     Robert Newman's Self-Reported Income Tax Liabilities for Tax Year 2014

Mr. Newman reported $20,810 in tax and no payments on his 2014 Form 1040, which he signed. *Id.* ¶ 10. On October 19, 2015, based on the amount of tax reported on the return, the IRS assessed $20,810 in tax on Mr. Newman's income tax account for tax year 2014. *Id.* ¶ 11. For tax year 2014, Mr. Newman owes $37,078.12 in income tax liabilities as of July 31, 2023, including unpaid income tax, penalties, interest, and other statutory additions. *Id.* ¶ 12.

### E.     Robert Newman's Self-Reported Income Tax Liabilities for Tax Year 2015

Mr. Newman reported $5,063 in tax and no payments on his 2015 Form 1040, which he signed. *Id.* ¶ 13. On February 20, 2017, based on the amount of tax reported on the return, the IRS assessed $5,063 in tax on Mr. Newman's income tax account for tax year 2015. *Id.* ¶ 14. For tax year 2015, Mr. Newman owes $10,357.79 in income tax liabilities as of July 31, 2023, including unpaid income tax, penalties, interest, and other statutory additions. *Id.* ¶ 15.

### F.     Robert Newman's Self-Reported Income Tax Liabilities for Tax Year 2016

Mr. Newman reported $20,897 in tax and no payments on his 2016 Form 1040, which he signed. *Id.* ¶ 16. On December 18, 2017, based on the amount of tax reported on the return, the IRS assessed $20,897 in tax on Mr. Newman's income tax account for tax year 2016. *Id.* ¶ 17. For tax year 2016, Mr. Newman owes $30,207.37 in income tax liabilities as of July 31, 2023, including unpaid income tax, penalties, interest, and other statutory additions. *Id.* ¶ 18.

### G.   Robert Newman's Self-Reported Income Tax Liabilities for Tax Year 2017

Mr. Newman reported $10,476 in tax and no payments on his 2017 Form 1040, which he signed.  *Id.* ¶ 19.  On July 4, 2022, based on the amount of tax reported on the return, the IRS assessed $10,476 in tax on Mr. Newman's income tax account for tax year 2017.  *Id.* ¶ 20.  For tax year 2017, Mr. Newman owes $19,404.43 in income tax liabilities as of July 31, 2023, including unpaid income tax, penalties, interest, and other statutory additions.  *Id.* ¶ 21.

### H.   Robert Newman's Self-Reported Income Tax Liabilities for Tax Year 2020

Mr. Newman reported $9,119 in tax and no payments, except a recovery rebate credit of $1,800, on his 2020 Form 1040, which he signed.  *Id.* ¶ 22.  On July 11, 2022, based on the amount of tax reported on the return, the IRS assessed $9,119 in tax on Mr. Newman's income tax account for tax year 2020, which also reflected the recovery rebate credit.[3]  *Id.* ¶ 23.  For tax year 2020, Mr. Newman owes $9,152.99 in income tax liabilities as of July 31, 2023, including unpaid income tax, penalties, interest, and other statutory additions.  *Id.* ¶ 24.

### I.   Robert Newman's Total Self-Reported Income Tax Liabilities and Failure to Pay

On or about the dates of each of the income tax assessments described above for tax years 2011 through 2017 and 2020, a delegate of the Secretary of the Treasury gave notice and made a demand for payment of the balance due to Mr. Newman.  *Id.*

---

[3]      PSMF ¶ 23 does not reference the inclusion of the recovery rebate credit in Mr. Newman's income tax account for tax year 2020.  For completeness, the Court has noted the credit's inclusion in the account ledger.

¶ 25.  Despite notice and demand, Mr. Newman has failed, neglected, or refused to pay in full the income tax liabilities for tax years 2011 to 2017 and 2020.  *Id.* ¶ 26.  Mr. Newman's total self-reported income tax liability for tax years 2011 to 2017 and 2020 is $255,319.79 as of July 31, 2023.[4]  *Id.* ¶ 27.

### J.     The Real Property at 13 Annies Way, Kennebunk, Maine

Mr. Newman owns the real property at 13 Annies Way, Kennebunk, Maine, which has a legal description contained in Schedule A of the Warranty Deed from Richard P. Dacri and Barbara L. Dacri to Robert K. Newman, dated January 16, 2004, and recorded in the York County Registry of Deeds at Book 13877, Page 54, on January 22, 2004.  *Id.* ¶ 28.  13 Annies Way has a fair market value of at least $700,000.  *Id.* ¶ 29.

## III.   THE PARTIES' POSITIONS

### A.     The Government's Motion for Partial Summary Judgment

The Government moves for partial summary judgment that:

(1) "[D]efendant Robert K. Newman is liable to the United States for self-reported income tax liabilities for tax years 2011 to 2017 and 2020 in the amount of $325,132.52 as of July 31, 2023";

---

[4]        PSMF ¶ 27 states: "The total of Robert Newman's self-reported income tax liabilities for tax years 2011 to 2017 and 2020 is $325,132.52, as of July 31, 2023."  As factual support for this statement, the Government cites paragraph 13 of the Bishop Declaration and also represents that $325,132.52 is "the sum of liabilities stated above in paragraphs 3, 6, 9, 12, 15, 18, 21, and 24."  *Id.*  While the Bishop Declaration provides factual support for PSMF ¶ 27, the Court observes that the figures in PSMF ¶¶ 3, 6, 9, 12, 15, 18, 21, and 24 actually sum to $255,319.79.  Construing ambiguities in the light most favorable to Mr. Newman, the Court has amended PSMF ¶ 27 to reflect the Government's representation that Mr. Newman's total self-reported income tax liability is the sum of his individual liabilities, which is $255,319.79.

(2) "[T]here exist valid and subsisting tax liens securing those self-reported income tax liabilities that attached to the real property located at 13 Annies Way, Kennebunk, Maine"; and

(3) "[T]he United States is entitled to enforce the liens under 26 U.S.C. § 7403 through a sale of that property, including a receiver appointed under § 7403(d) as requested by the United States."

*Gov't's Mot.* at 1-2.  The Government also clarifies that its motion "is limited to the self-reported income tax."  *Id.* at 2.

In its memorandum of law, the Government first affirmatively argues for partial summary judgment and then attempts to refute Mr. Newman's potential defenses.  In support of partial summary judgment, the Government first observes that the IRS "assessed tax based on [Mr. Newman's] self-reported taxes."  *Gov't's Mem. of Law* at 5.  The Government then asserts that the "current balances of these taxes . . . are indisputable since the additional penalties and interest are mathematical functions of the tax."  *Id.*  With the "self-reported income taxes being readily established, the existence of tax liens attaching to 13 Annies Way follow automatically," the Government continues, because Mr. Newman failed to pay his outstanding income taxes after notice and demand by the IRS.  *Id.* at 6.  The Government also lists the dates on which it filed Notices of Federal Tax Lien against Mr. Newman to further support its claim that there are valid tax liens attached to 13 Annies Way.  *Id.* at 6-7.  As a result, according to the Government, "[t]here is no genuine dispute as to the . . . material facts supporting a money judgment for Robert

13

Newman's self-reported income tax liabilities or the United States' entitlement to collect on those liabilities by enforcing tax liens against 13 Annies Way." *Id.* at 5.

Turning to Mr. Newman's potential defenses, the Government argues that "[e]ven taking all of Newman's factual assertions in the light most favorable to him, they do not affect the United States' rights to a judgment for his self-reported liabilities or enforcement of the tax liens." *Id.* at 7-8.  The Government addresses four potential defenses.

First, the Government observes that Mr. Newman "has asserted as a possible defense that the IRS had determined sometime around 2015 or 2016 that he was 'uncollectible' and that 'the IRS would close the case and cease collection activity.'" *Id.* at 8.  The Government concedes that Mr. Newman's "file was marked 'Currently Not Collectible' in November 2017 and was then closed for collections activity." *Id.* It counters, however, that "files marked 'CNC' are 'currently' but not *permanently* uncollectible," and the IRS can restart collections activity "when collection appears possible." *Id.* (emphasis in original).  Further, the Government represents that "it is common for IRS to designate an account as CNC if the only current source of collection is a home until the 10-year limitations period is approaching, to give the taxpayer a chance to improve their finances and satisfy liabilities through means other than a forced sale of a home." *Id.* at 9.

Second, the Government addresses Mr. Newman's contention that the IRS "pursued collections against him based on flawed assumptions about the value of 13 Annies Way." *Id.*  The Government acknowledges that its "view of the estimated fair

14

market value of [13 Annies Way] has declined," but it maintains that "there is no dispute that the fair market value is still at least $700,000." *Id.* at 9-10. According to the Government, a sale of 13 Annies Way for $700,000 would still be justified, even though "the United States may not recover much," because "the United States can enforce liens against property so long as it holds any interest, however small." *Id.* at 10.

Third, the Government responds to Mr. Newman's argument that it failed to timely bring suit. The Government asserts that the limitations period is ten years from the date of assessment, and that it "timely filed this collection action on November 28, 2022, within 10 years of the earliest assessment sought to be collected, December 3, 2012." *Id.* at 10-11. It also clarifies that it "is not relying on any extensions of the collections period in establishing the timeliness of this suit." *Id.* at 11. Further, the Government claims that Mr. Newman's laches defense is without merit because the equitable defense of laches is not available against the Government. *Id.*

Finally, the Government reaches Mr. Newman's contention that it violated the statutory Taxpayer Bill of Rights during the collections process. The Government contends that the statutory Taxpayer Bill of Rights does not by itself grant enforceable rights, and therefore taxpayers cannot seek relief solely under the statutory Taxpayer Bill of Rights. *Id.* at 11-12.

The Government concludes by observing that Mr. Newman "has failed to cite to any other provision of law that would grant him relief from his liabilities or prohibit the Government from pursuing this action." *Id.* at 12.

## B.   Robert Newman's Opposition

Mr. Newman's arguments opposing the Government's motion fall into two broad categories.[5]  First, Mr. Newman argues that the Government violated several laws and regulations during the collections process.  Second, he contends that the Court should deny the Government's motion for equitable reasons.

Mr. Newman makes three arguments in support of the conclusion that "the Internal Revenue Service and then subsequently . . . the Department of Justice have conducted a single-minded collection and prosecution process that has lacked organization and fact and had only one goal—removing the defendant from his property from early on." *Def.'s Opp'n* at 2.  First, Mr. Newman contends that the "Internal Revenue Service violated the Taxpayer Bill of Rights constantly resulting in a lack of Due Process and a proposed result that will not compensate the defendant to pay the Plaintiff more than 10-15 percent of the amount of money the Defendant allegedly owes." *Id.*  In particular, according to Mr. Newman, the IRS "violated the Taxpayer Bill of Rights in initially attempting to collect taxes from the defendant in December, 2022." *Id.* at 10.  Mr. Newman further suggests that "Revenue Officer

---

[5]     Mr. Newman also makes several arguments addressing issues that are outside the scope of the present motion.  For example, Mr. Newman addresses the unpaid employment taxes the Government seeks to recover from his business, Newman Communications, Inc.  *Def.'s Opp'n* at 6-7.  The Government was careful to clarify in its motion, however, that it is only seeking summary judgment on Mr. Newman's self-reported income tax liabilities.  *Gov't's Mot.* at 2.  For the sake of brevity and clarity, the Court does not include Mr. Newman's nonresponsive arguments in its summary of his position.

16

Donald Kerr violated the law's provisions numerous times – that taxpayers have a Right to Quality Service and a Right to be Informed." *Id.* According to Mr. Newman, discovery "has produced documents that indicate Mr. Kerr was never operating a collection process and instead was writing letters about a legal action early on without meeting with the Plaintiff, gathering information for a payment plan or visiting the Property." *Id.* Mr. Newman also claims that the Government does "not consider the Taxpayer Bill of Rights to be a 'real' law." *Id.*

Second, Mr. Newman contends that, based on the Government's "grossly incorrect estimate of home value," the sale of 13 Annies Way would "violate the Fifth Amendment's 'Takings' clause as the Defendant will not receive just compensation." *Id.* at 3. Citing *Tyler v. Hennepin County, Minnesota*, 143 S. Ct. 1369 (2023), Mr. Newman observes that "Courts support just compensation if a public entity is moving to seize personal property." *Id.* Mr. Newman estimates the Government's initial listing price for 13 Annies Way to be roughly $700,000. *Id.* at 10. According to Mr. Newman, a sale of the property for such a price "will yield an estimated $0 to $80,000 or less after the Mortgage holder and other lien holders . . . [are] paid." *Id.* at 3. Because of this, Mr. Newman contends that the Government's "alleged facts do not support the objective (recovering taxes)." *Id.* at 3-4.

Third, Mr. Newman contends that the Government "ignores" that his income tax liabilities "were deemed Currently Not Collectible by Revenue Officer Robert Libby who was asked by the Defendant, 'do I need to pay these taxes?' Mr. Libby's response was, 'no, they will fall off at 10 years.'" *Id.* at 5. Mr. Newman believes that

a forced sale of 13 Annies Way to recover limited equity "is not consistent with Internal Revenue Service policy, which previously deemed the Defendant's account Currently Not Collectible (CNC) with a greater equity value." *Id.* at 3.

Throughout his opposition, Mr. Newman also raises equitable arguments that he believes counsel in favor of denying the Government's motion. Mr. Newman informs the Court that he "has recently undergone significant head and neck cancer surgery and 10 weeks of Radiation therapy, and he will lose his primary location for recuperation" if 13 Annies Way is sold following a grant of partial summary judgment for the Government. *Id.* at 1. Mr. Newman also disputes the Government's contention that he has alternative living arrangements. *Id.* at 2. According to Mr. Newman, the Government "believes that receiving $18,000 for the Property from a sale of $700,000 . . . with what they assert is an estimated $700,000 in tax debt . . . is worth taking a Property from a U.S. citizen and one who is suffering from [a] Stage 4 cancer diagnosis with a poor prognosis." *Id.* at 9. In light of these facts, Mr. Newman asserts that "[t]hrowing him out" of 13 Annies Way "is barbaric." *Id.* at 15.

Additionally, Mr. Newman contends that partial summary judgment should be denied because 13 Annies Way "is also the primary residence of Mr. Zachary Heitling, a Veteran and U.S. citizen, who has lived at the Property since August 8, 2019." *Id.* at 1. According to Mr. Newman, "Mr. Heitling is a resident of the State of Maine who resides at the property and receives his mail at the Property." *Id.* Mr. Newman represents that "Mr. Heitling will . . . be displaced from the Property if the motion for Summary Judgment is granted." *Id.*

18

C.      **The Government's Reply**

The Government begins its reply by asserting that "Robert K. Newman does not meaningfully dispute his self-reported income tax liabilities," "fails to contest the facts or law giving rise to the liabilities and tax liens that are the subject of the motion," and "presents no authority precluding this collection action." *Gov't's Reply* at 1.  It observes that "Mr. Newman primarily opposes a sale of the Property on equitable grounds, but he has not presented the kind of extraordinary circumstances that might justify not ordering a sale." *Id.* at 1-2.  In the remainder of its reply, the Government explores these contentions in more detail.

The Government first addresses Mr. Newman's arguments that the Government's motion should be denied because laws and procedures were violated during the collections process.  The Government observes that Mr. Newman "points to no law requiring IRS to have processed his return more quickly; and critically, he does not dispute that the 10-year collection period starts on the date of assessment." *Id.* at 3.  The Government then asserts that "Mr. Newman fails to present any authority to contradict those cited in the United States' Motion, which establish that [currently not collectible] status does not preclude collection and that the Statutory Taxpayer Bill of Rights does not create independently enforceable rights that might preclude collection." *Id.*  Finally, the Government suggests that courts "consistently reject the idea that the government must exhaust alternative collection options before enforcing liens against a residence." *Id.* at 3-4.

19

Turning to Mr. Newman's equitable arguments, the Government claims that the Court's equitable discretion "is very limited in this area and Mr. Newman's circumstances do not remotely rise to the level of denying enforcement of the tax liens, especially where the value of the government's interest is diminishing daily." *Id.* at 4. The Government then quotes *United States v. Rodgers*, 461 U.S. 677 (1983), for the proposition that "the limited discretion accorded by [26 U.S.C.] § 7403 should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." *Gov't's Reply* at 4 (quoting *Rodgers*, 461 U.S. at 711). According to the Government, there are "virtually no circumstances . . . in which it would be permissible to refuse to authorize a sale simply to protect the interests of the delinquent taxpayer." *Id.* at 4-5 (quoting *Rodgers*, 461 U.S. at 709).

After discussing the parameters of the Court's equitable discretion, the Government claims that "[e]ven if Mr. Newman's various personal issues could warrant withholding a decree of sale . . . the facts show that a sale would not cause him undue hardship." *Id.* at 5. The Government cites four factual bases in support of this contention. First, it claims that "Mr. Newman has considerable financial resources" based on his net business income, which, according to the Government, has ranged from $11,667 to over $40,000 per month for the past two years. *Id.* Second, it argues that "Mr. Newman spends considerable time in Florida, where his wife (to whom he was recently married) lives, and it is fair to presume he can relocate there." *Id.* Third, it suggests that "Mr. Newman does not need 13 Annies Way for

20

reasons of his cancer" because he "does not receive medical care for his cancer in Maine." *Id.* at 6.  Finally, it argues that the presence of Mr. Heitling "cannot be interposed to prevent a sale" because "Mr. Newman has not shown Mr. Heitling has any legal right to live at the Property that would be disturbed by a sale." *Id.* at 7.

## IV.   LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "Genuine issues of fact are those that a factfinder could resolve in favor of the nonmovant, while material facts are those whose 'existence or nonexistence has the potential to change the outcome of the suit.'" *Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 38 (1st Cir. 2014) (quoting *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011)).

When the movant "has made a preliminary showing that there is no genuine issue of material fact, the nonmovant must 'produce specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue.'" *McCarthy v. City of Newburyport*, 252 F. App'x 328, 332 (1st Cir. 2007) (alteration in original) (quoting *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999)). The nonmoving party must provide "'enough competent evidence' to enable a factfinder to decide in its favor on the disputed claims." *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002) (quoting *Goldman v. First Nat'l Bank of Bos.*, 985 F.2d 1113, 1116 (1st Cir. 1993)).  Then, a "court views the facts and draws all reasonable inferences in favor of the nonmoving party," *Ophthalmic Surgeons, Ltd. v. Paychex,*

*Inc.*, 632 F.3d 31, 35 (1st Cir. 2011), but disregards "[c]onclusory allegations, improbable inferences, acrimonious invective, or rank speculation." *Mancini v. City of Providence ex rel. Lombardi*, 909 F.3d 32, 38 (1st Cir. 2018) (quoting *Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010)). "[T]he plain language of Rule 56(c) mandates entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## V.   DISCUSSION

26 U.S.C. § 6321 provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

Upon a taxpayer's failure "to pay federal taxes despite a demand for payment, tax liens 'in favor of the United States' automatically attach to all of that person's 'property and rights to property, whether real or personal.'" *Hannon v. City of Newton*, 744 F.3d 759, 765 (1st Cir. 2014) (quoting 26 U.S.C. § 6321). "The statutory language authorizing the tax lien 'is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have.'" *United States v. Craft*, 535 U.S. 274, 283 (2002) (quoting *United States v. Nat'l Bank of Com.*, 472 U.S. 713, 719-20 (1985)). "Stronger language could hardly have been selected to

reveal a purpose to assure the collection of taxes." *Id.* (quoting *Glass City Bank v. United States*, 326 U.S. 265, 267 (1945)).

Here, Mr. Newman reported unpaid income taxes on his signed individual income tax returns for the years 2011, 2012, 2013, 2014, 2015, 2016, 2017, and 2020. PSMF ¶¶ 1, 4, 7, 10, 13, 16, 19, 22. The IRS subsequently made assessments against Mr. Newman for each of these years based on the amounts of unpaid tax reported on Mr. Newman's returns. *Id.* ¶¶ 2, 5, 8, 11, 14, 17, 20, 23. On or about the time the IRS made these assessments, notice and demand was given to Mr. Newman by a delegate of the Secretary of the Treasury. *Id.* ¶ 25. Despite the provision of notice and demand, Mr. Newman has failed to fully pay his outstanding self-reported income tax liabilities, which total $255,319.79 as of July 31, 2023. *Id.* ¶ 27. Therefore, since Mr. Newman "neglect[ed] or refus[ed]" to pay after demand, the Court finds that his outstanding tax liabilities have become "a lien in favor of the United States" against all of Mr. Newman's real and personal property. *See* 26 U.S.C. § 6321. As it is undisputed that Mr. Newman owns 13 Annies Way, PSMF ¶ 28, the Court further finds that the lien for Mr. Newman's self-reported income tax liabilities has attached to 13 Annies Way. Therefore, the Government has shown that partial summary judgment on Mr. Newman's self-reported income tax liabilities is warranted.

While Mr. Newman attempts to refute this conclusion by making various legal arguments, none of his contentions is availing. While it is undisputed that Mr. Newman's file was at one point marked Currently Not Collectible (CNC), the

Government "reserves the right to renew collection efforts" for accounts deemed CNC. *Lantz v. Comm'r of Internal Revenue*, 607 F.3d 479, 487 (7th Cir. 2010). Although Mr. Newman maintains that he was previously told by IRS Revenue Officer Robert Libby that his tax liabilities marked CNC would "fall off at 10 years," *Def.'s Opp'n* at 5, this statement appears to have been incorrect. While Mr. Newman may be frustrated at apparently receiving incorrect information from Mr. Libby, Mr. Libby's assurances do not constitute a legal defense, particularly where *Lantz* makes clear that CNC status does not bar future collections activity. Therefore, the fact that Mr. Newman's account was formerly marked CNC does not negate the existence of the tax liens attached to 13 Annies Way.

Similarly, Mr. Newman's arguments that the Government violated the statutory Taxpayer Bill of Rights are unavailing. In *Facebook, Inc. v. Internal Revenue Serv.*, No. 17-cv-06490-LB, 2018 U.S. Dist. LEXIS 81986 (N.D. Cal. May 14, 2018), the U.S. District Court for the Northern District of California recounted in great detail the history of the statutory Taxpayer Bill of Rights.[6] Relevant here, the statutory Taxpayer Bill of Rights was enacted on December 18, 2015 as part of the Protecting Americans from Tax Hikes Act of 2015 and codified at 26 U.S.C. § 7803(a)(3). *Id.* at *24. It contains ten rights, including "the right to be informed," " the right to quality service," and "the right to a fair and just tax system." 26 U.S.C. § 7803(a)(3).

---

[6]     The Court uses the term "statutory Taxpayer Bill of Rights" to avoid confusion with the initial version of the Taxpayer Bill of Rights, which the IRS promulgated in 2014. *See Facebook, Inc.*, 2018 U.S. Dist LEXIS 81986, at *20-21; INTERNAL REVENUE SERV., PUBL'N 1: YOUR RIGHTS AS A TAXPAYER (2014), https://www.irs.gov/pub/irs-prior/p1--2014.pdf.

Importantly, the statutory Taxpayer Bill of Rights did not create any new rights. By its very terms, 26 U.S.C. § 7803(a)(3) provides that the Commissioner of Internal Revenue "shall ensure that employees of the Internal Revenue Service are familiar with and act in accord with taxpayer rights *as afforded by other provisions of this title*." *Id.* (emphasis supplied). Put another way, the statutory Taxpayer Bill of Rights "did not grant new enforceable rights." *Facebook, Inc.*, 2018 U.S. District LEXIS, at *35-36. Instead, it imposed "an affirmative obligation on the Commissioner of Internal Revenue" to "better manage and train IRS employees to ensure that IRS employees know what rights taxpayers have and act in a way that respects those rights." *Id.* at *36. In other words, the law was not intended to confer new rights; it was intended to ensure that IRS employees were better trained to respect those rights that already existed. As a result, the statutory Taxpayer Bill of Rights does not "confer any individual cause of action." *United States v. Schwartz*, 615 F. Supp. 3d 184, 190 (E.D.N.Y. 2022) (quoting *Eckhardt v. Internal Revenue Serv.*, No. H-21-1297, 2022 U.S. Dist. LEXIS 122470, at *15 (S.D. Tex. July 7, 2022)).

Mr. Newman does not cite any statutory authority other than the statutory Taxpayer Bill of Rights in support of his contention that the Government violated his rights during the collections process. In a vacuum, Mr. Newman, who is *pro se*, could be excused for his failure to recognize that the statutory Taxpayer Bill of Rights does not create a standalone cause of action. However, the Government pointed out this fact in its initial memorandum of law. *See Gov't's Mem. of Law* at 12 ("As multiple courts have found, '[t]he statutory [Taxpayer Bill of Rights] enacted as part of the

2015 PATH Act did not grant new enforceable rights'" (quoting *Facebook, Inc.*, 2018 U.S. Dist. LEXIS, at *35 (alterations in original)).   Mr. Newman apparently discounted the Government's explanation, accusing it of not "consider[ing] the Taxpayer Bill of Rights to be a 'real' law." *Def.'s Opp'n* at 10.   Based on this Court's determination that the statutory Taxpayer Bill of Rights did not create a standalone cause of action, the Court rejects Mr. Newman's claims based on the statutory Taxpayer Bill of Rights as Mr. Newman has not identified any other statutory rights afforded by Title 26 of the United States Code that might serve to defeat the Government's motion for partial summary judgment.

The only other legal source of authority Mr. Newman cites in opposition to the Government's motion is the Supreme Court's recent decision in *Tyler v. Hennepin County, Minnesota*, 143 S. Ct. 1369 (2023).   Relying on *Tyler*, Mr. Newman claims that "Courts support just compensation if a public entity is moving to seize personal property." *Def.'s Opp'n* at 3.   He further contends that the Government's plan to sell 13 Annies Way using a receiver should partial summary judgment be granted would not yield just compensation. *Id.* This argument is premature.   In *Tyler*, the Supreme Court held that in situations where the Government sells real property to satisfy a tax debt, the Government may not keep any proceeds of the sale that exceed the tax debt. *Tyler*, 143 S. Ct. at 1380-81.   Here, the Government has not sold 13 Annies Way, nor has it even set an initial sale price.   The Government is merely seeking partial summary judgment based on Mr. Newman's self-reported income tax liabilities.   Mr. Newman's reliance on *Tyler* is unavailing.

In addition to his legal arguments, Mr. Newman suggests that equitable considerations favor the denial of the Government's motion. The Government concedes that where, as here, it ultimately aims to sell real property pursuant to 26 U.S.C. § 7403,[7] a district court is not required "to authorize a forced sale under absolutely all circumstances," and "some limited room is left . . . for the exercise of reasoned discretion." *United States v. Rodgers*, 461 U.S. 677, 706 (1983). However, district courts do not have "unbridled discretion." *Id.* at 709. The Supreme Court has emphasized this point by observing that "[w]e can think of virtually no circumstances . . . in which it would be permissible to refuse to authorize a sale simply to protect the interests of the delinquent taxpayer." *Id.*; *see also United States v. Murray*, 217 F.3d 59, 66 (1st Cir. 2000) ("The *Rodgers* decision says that under the tax lien statute, the district court has limited discretion to refuse to order a sale in order to protect the interests of *innocent third parties*") (emphasis supplied) (citing *Rodgers*, 461 U.S. at 709-11). "[T]he limited discretion accorded by § 7403 should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of taxes." *Rogers*, 461 U.S. at 711.

---

[7] 26 U.S.C. § 7403(a) provides:

> In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability.

The Supreme Court has specified that "the lien of the United States" "is that created by 26 U.S.C. § 6321." *Rodgers*, 461 U.S. at 681. Under 26 U.S.C. § 7403(c), courts "may decree a sale of" any real property to which a lien has attached "in all cases where a claim or interest of the United States therein is established."

Here, most of Mr. Newman's equitable arguments are related to Mr. Newman himself. For example, Mr. Newman emphasizes that he "has recently undergone significant head and neck cancer surgery and 10 weeks of radiation therapy, and he will lose his primary location for recuperation" if the Government proceeds with a forced sale of 13 Annies Way. *Def.'s Opp'n* at 1. Although the Court sympathizes with Mr. Newman and wishes him the best in his fight against cancer, such arguments are unavailing in light of the Supreme Court's admonition in *Rodgers* that courts should not block a forced sale "simply to protect the interests of the delinquent taxpayer himself." *Rodgers*, 461 U.S. at 709. Despite the Court's empathy, the fact remains that Mr. Newman has failed to pay in full his income taxes for eight of the past twelve years. To find that Mr. Newman's health issues prevent the Government from enforcing the federal tax liens attached to 13 Annies Way would not be fair to the countless American citizens who dutifully pay their taxes every year while combatting health and other extenuating personal difficulties. Therefore, the Court declines to find that equitable considerations pertaining to Mr. Newman himself can defeat the Government's motion.

Mr. Newman also represents that a forced sale of 13 Annies Way would displace Zachary Heitling, "who has lived at the Property since August 8, 2019." *Def.'s Opp'n* at 1. *Rodgers* authorized district courts to exercise limited equitable discretion in favor of third parties, taking into account the following factors:

> (1) "the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes;" (2) whether the third party would have a "legally recognized expectation that that separate property

28

> would not be subject to forced sale by the delinquent taxpayer or his or her creditors;" (3) the "likely prejudice to the third party," both in relocation costs and the practical inability to fully compensate for the loss of a home; and (4) the "relative character and value of the non-liable and liable interests held in the property."

*United States v. Molina*, No. 13-1571 (DRD/BJM), 2014 U.S. Dist. LEXIS 109311, at *6 (D.P.R. May 16, 2014) (quoting *Rodgers*, 461 U.S. at 710-11).  Of the four factors articulated in *Rodgers*, the first two appear to contemplate the third party having a recognized property interest.  Here, however, Mr. Newman has conceded that "Mr. Heitling stays at 13 Annies Way without paying rent, in exchange for doing work for Newman's business."  *Gov't's Reply* at 7.  Mr. Heitling, therefore, does not have a recognized property interest in 13 Annies Way.  Further, Mr. Newman has not provided the Court with any details about Mr. Heitling's financial condition, including whether he can obtain alternative housing.  The Court declines to find that Mr. Heitling's mere presence at 13 Annies Way is sufficient to halt the execution of the federal tax liens attached to the property.  Mr. Heitling does not have the type of property interest that would appear to justify the exercise of equitable discretion under *Rodgers*, and the Court therefore declines to exercise its equitable discretion in this case.

## VI.  CONCLUSION

The Court GRANTS in part and DISMISSES without prejudice in part Plaintiff United States of America's Motion for Partial Summary Judgment on Self-Reported Income Taxes. Specifically, the Court holds that:

(1) Robert K. Newman is liable to the United States for self-reported income tax liabilities for tax years 2011 to 2017 and 2020 in the amount of $255,319.79 as of July 31, 2023;

(2) There exist valid and subsisting tax liens securing those self-reported income tax liabilities attached to 13 Annies Way, Kennebunk, Maine; and

(3) The United States is entitled to enforce the liens pursuant to 26 U.S.C. § 7403 through a sale of that property, including by using a receiver appointed under 26 U.S.C. § 7403(d) as requested by the United States and authorized by the Court's Order on Motion for Appointment of Prejudgment Receiver to Sell Property (ECF No. 95).

(4) To the extent the Government demands a judgment in excess of $255,319.79, the Court DISMISSES without prejudice Plaintiff United States of America's Motion for Partial Summary Judgment on Self-Reported Income Taxes.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 9th day of November, 2023

30